## ANDY HARRIS *v.* THE STATE.

1. CHARGE OF COURT ON WEIGHT OF EVIDENCE.—On a trial for theft the court below instructed the jury that confessions voluntarily made, or which led to the discovery of the property alleged to have been stolen, are the strongest and most satisfactory evidence. *Held*, erroneous, as a charge on the weight of evidence.

2. EVIDENCE—CONFESSIONS.—The Code of Criminal Procedure prescribes the same rules with regard to confessions as prevailed under the common law, before the adoption of the Code.

3. SAME—HEARSAY.—The prosecution proved by a witness that, in pursuance of statements of accused, he went to a house designated by accused, for the purpose of seeking the article alleged to be stolen; that he found it in the house, but not in the exact spot therein designated by accused; that witness could not identify it as the stolen property, but that a female occupant of the house told him it was the article he was seeking. *Held*, that the objection of the accused to the statement of the female to the witness, as hearsay, should have been sustained.

4. DISCREPANCY BETWEEN STATEMENT OF FACTS AND BILL OF EXCEPTIONS.—In a statement of facts, made out by the district judge, there is no mention of certain evidence having been admitted over exceptions by accused. But a bill of exceptions discloses the evidence, the objections,

and the ruling thereon of the court below. This court imputes to inadvertence the silence of the statement of facts, and revises the ruling brought up in the bill of exceptions.

APPEAL from the District Court of Bell. Tried below before the Hon. X. B. SAUNDERS.

The facts appear in the opinion.

*A. D. McGinnis* and *H. E. Bradford*, for the appellant.

*H. H. Boone*, Attorney General, for the State.

ECTOR, Presiding Judge. The appellant was indicted in the district court of Bell county, charged with theft of " one ham of bacon" from a house. The indictment is in the usual form, and is a good indictment.

There were only two witnesses examined on the trial in the court below; and, for a proper understanding of the case, we deem it best here to give the testimony of those witnesses as given in the statement of facts.

Isaac Williams testified: "I reside in Bell county, Texas, and am the owner of the ham of bacon charged to have been stolen. The ham was taken from my smoke-house on the 24th of April, 1876. I was informed that the ham had been stolen. The next day I saw the defendant, and accused him of having stolen the ham. At first he denied having taken it. I told him that he need not deny taking the ham; that I knew he did it, and that it would be better for him to confess it. He was not under arrest at the time. I made no threat against him. He then acknowledged having taken the ham from the smoke-house, and showed me where he laid it on the grass, which was bent down and greased." The witness stated that there were two hams of bacon stolen, and that defendant acknowledged taking both of them; also that, after defendant had shown him where the bacon had

been placed, witness asked defendant where the ham then was, and defendant replied that it was in a chest in the room of a negro named Bowman. Prosecuting witness' son, who was present, went to the house of Bowman, and returned with a ham of bacon. Witness could not swear positively to the identity of the ham of bacon brought back by his son as being the ham of bacon stolen from his smoke-house, but believed that it was one of the hams stolen at the time the theft was committed. Witness had never given defendant permission to take the hams of bacon. Witness suspected defendant of having stolen the hams as soon as he learned of the theft. This theft took place in Bell county, Texas. ·

Mike Williams, the second witness for the state, testified: "I was present on the 25th of April when Andy Harris confessed having stolen the ham of bacon from Isaac Williams. He was not under arrest at the time that the confession was made. He said that the ham of bacon was in the house of Bowman, a negro, in a chest. I went to the house of Bowman to look for the ham. I found it in the house of Bowman; it was not in a chest, but was hanging on the wall. I carried it to where Andy Harris and Isaac Williams were. Andy again acknowledged that he had stolen the ham of bacon. He said that this was one of the hams he had stolen from Isaac Williams, and it was the result of this statement, as to where the ham was, that I found it. The bone had been taken out of the ham I found at the house of Bowman, which defendant acknowledged to be one of the hams he had stolen from the witness, Isaac Williams. I could not, of my own knowledge, identify the ham as one of the stolen hams; I could not swear I had ever seen it before."

The counsel of the defendant in the court below moved the court to rule out the confessions of defendant, because

the same were not voluntarily made ; which motion was over-
ruled, and to which ruling the defendant took a bill of
exceptions.

It also appears from the transcript that defendant excepted,
on the trial of the case, to a part of the evidence of Mike
Williams, wherein he stated " that Joe Bowman's wife told
him the ham of meat he got hanging up in her house was
the ham he was looking for," because the statement of the
witness was hearsay evidence ; which objection was overruled
by the court, and the witness permitted to testify as to what
she told him, and which was then excepted to by the defend-
ant ; and he took a bill of exceptions.

It is true that in the statement of facts it does not appear
that Mike Williams, in his testimony, stated anything that
Joe Bowman's wife told him.   The counsel on both sides
could not agree on a statement of facts, and one was made
out by the judge.   We conclude that the judge omitted
this by inadvertence, as the record shows he signed a bill
of exceptions, tendered him by the counsel for the defend-
ant, as to the rulings of the court on the admission of this
testimony.

The defendant also excepted to the charge of the court,
especially to that portion of it in regard to the confessions
of the defendant.   The jury found the defendant guilty,
and assessed his punishment at two years' confinement in
the penitentiary.   The defendant filed his motion for new
trial, which was overruled, and the defendant appealed.

The defendant then made out and assigned the following
errors :

1st. The indictment is vague, defective, and insufficient.

2d. The court erred in permitting the confessions of
defendant to be given to the jury, because they were not
voluntarily given, and because they did not lead to the recov-
ery of the property alleged to have been taken, either as to
the place it was, or the identity of the property.

3d. The court erred in the charge to the jury, especially

the charge that a voluntary confession of guilt, without proof of the identity of stolen property, was sufficient to warrant a conviction.

4th. The court erred in qualifying the charge requested by defendant's counsel.

5th. The court erred in permitting witness Mike Williams to tell the jury what Joe Bowman's wife told him about the ham of meat, charged to have been stolen, being the one he was looking for.

6th. The verdict of the jury is contrary to law, and unwarranted by the evidence.

One of the instructions given to the jury by the court below, on the trial of the cause, is as follows :

" While confessions of guilt should be received and acted upon with great caution, yet, when voluntarily made, or, after being made, leads to the discovery of the stolen property, then it becomes the strongest, and very satisfactory, kind."

We believe the court erred in the above instruction.

" The confession of a defendant may be used in evidence against him if it appear that the same was freely made, without compulsion or persuasion, under the rules hereinafter prescribed." Art. 3126, Cr. Pro., Pasc. Dig.

" The confession shall not be used if, at the time it was made, the defendant was in jail, or other place of confinement, nor while he is in custody of an officer, unless such confession be made in the voluntary statement of the accused, taken before an examining court, in accordance with law, or be made voluntarily, after having been first cautioned that it may be used against him ; or unless, in connection with such confession, he make statement of facts or of circumstances that are found to be true, which conduce to establish his guilt—such as the finding of secreted or stolen property, or instruments with which, he states, the offense was committed." Art. 3127.

We believe that, when confessions of a defendant are

allowed to go to a jury at all, the court should not instruct the jury, in any case, on the weight to be given to them by the jury in considering their verdict. The same rule in regard to confessions is adopted by us as was previously done under the rule of the common law, before the adoption of the Code of Criminal Procedure.

In the case of *Selvidge* v. *The State*, 30 Texas, 60, the court say: "When confessions are made under such circumstances as to render them inadmissible, if, in the confession, facts and circumstances are disclosed which are proved to be true by other testimony, and which conduce to establish the guilt of the accused, then such facts and circumstances are to be considered by the jury."

In another opinion, delivered in our own supreme court by Chief Justice Roberts (*Strait* v. *The State*, 43 Texas, 488), the court say: "In this case it appeared that the confessions, being made under duress, were not voluntary, and the court excluded them, except so far as they furnished information by which the property was recovered. It further appeared that, by means of statements made as to what disposition had been made and agreed to be made of the horses, they were tracked and ultimately recovered.

"Whilst the court admitted so much of the statements as was thus shown to be true, the jury were cautioned to consider them only in so far as proved by other testimony to be true. The whole question as to what was proved was properly left to the jury." See Roscoe's Cr. Ev. 50, 60; 1 Greenl. on Ev., sec. 231.

In the case of *Morrison* v. *The State*, 41 Texas, 520, the judge charged the jury: "That the voluntary confessions of a defendant are evidence against him, and are to be regarded as the strongest proof in the law; and if you believe that the defendant stated, when found with the hogs, that he thought they belonged to Whitten, or Lawson, or Hall, then you cannot suppose that he thought the hogs

belonged to Catherine Johnson." That charge was made ground for new trial. The court say : " We are of the opinion that the charge of the court, here complained of, is erroneous. When it is said that deliberate and voluntary confessions of guilt are among the most effectual proofs in the law, it is to be regarded as persuasive, rather than an authoritative rule of law. Confessions, being proved like other facts, are received in evidence under certain prescribed rules, and the credit to be given to them is to be estimated and weighed by the jury under the circumstances of the case. Cr. Pro. 3126, 3127.

" The charge of the court is objectionable as expressing an opinion on the weight of the evidence (Cr. Pro., Art. 3059), and the jury should have been left free to judge of the facts, and to draw their own conclusions from them, under a charge setting forth the law applicable to the case, without any expression of opinion on the facts or the weight of the evidence." Arts. 3058, 3108.

This, we believe, is a case in point.

We believe, also, that the court below erred in permitting the witness Mike Williams to tell what Joe Bowman's wife told him. This was hearsay evidence, and clearly inadmissible. As a general rule, hearsay evidence is inadmissible. There are some exceptions to this rule, but this does not come within one of the exceptions. The general rule is that the law rejects all hearsay reports of transactions, or statements, whether verbal or written, given by a person not produced as a witness. The principle of the rule is that such evidence requires credit to be given to a statement made by a person who is not subjected to the ordinary tests enjoined by the law for ascertaining the correctness and completeness of his testimony—namely, that oral testimony should be delivered in the presence of the court, or a magistrate, under the moral and legal sanctions of an oath, and where the moral and intellectual character, the motives

and deportment, of the witness can be examined, and his capacity and opportunities for observation, and his memory, can be tested by a cross-examination. Such evidence, moreover, as to oral declarations, is very liable to be fallacious, and its value is, therefore, greatly lessened by the probability that the declaration was imperfectly heard, or was misunderstood, or is not accurately remembered, or has been perverted. It is also to be observed that the persons communicating such evidence are not exposed to the danger of a prosecution for perjury, in which something more than the testimony of one witness is necessary in order to a conviction; for, when the declaration or statement is sworn to have been made when no third person was present, it is hardly possible to punish the witness, even if his testimony is an entire fabrication. 1 Greenl. on Ev. 149. For error in the charge of the court the judgment is reversed.

*Reversed and remanded.*